IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| APRIL HUMPHREY, | ) | CASE NO. 1:12 CV 280 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -2-

Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -3-
    A.    Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -3-
    B.    The ALJ's decision . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -3-
    C.    Arguments for reversal of the Commissioner's decision . . . . . . . . . . . . -5-

Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -6-
    A.    Standards of review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -6-
        1.    Substantial evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -6-
        2.    Treating physician rule . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -7-
    B.    Application of standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -14-
        1.    The ALJ's assessment of the opinion of treating physician Dr. Waghray conforms to the treating physician rule and is supported by substantial evidence. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -14-
        2.    The ALJ's credibility decision to discount Humphrey's credibility was proper under the applicable standards and is supported by substantial evidence. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -18-
        3.    The RFC findings as to cognitive function are supported by substantial evidence.
            . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -20-

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -22-

## Introduction

Before me[1] is an action under 42 U.S.C. § 405(g) by plaintiff April Humphrey seeking judicial review of the final decision of the Commissioner of Social Security denying her applications for disability insurance benefits and supplemental security income.[2] The Commissioner has filed an answer[3] and the transcript of the administrative proceedings.[4] Pursuant to my initial order[5] and procedural order,[6] the parties have briefed their positions[7] and filed supporting charts[8] and fact sheets.[9] The parties participated in a telephonic oral argument.[10]

For the reasons stated below, I will find that the Commissioner's decision is supported by substantial evidence and will, therefore, be affirmed.

---

[1] The parties have consented to my exercise of jurisdiction. ECF # 14.

[2] ECF # 1. Because Humphrey is now receiving state workers' compensation benefits, she has stated that the portion of her application dealing with supplemental security income benefits is now moot. *See,* ECF # 19 at 1.

[3] ECF # 11.

[4] ECF # 13.

[5] ECF # 5.

[6] ECF # 18.

[7] ECF # 24 (Humphrey's brief); ECF # 30 (Commissioner's brief).

[8] ECF # 24, Attachment 1 (Humphrey's charts); ECF # 30, Attachment 1 (Commissioner's charts).

[9] ECF # 17 (Humphrey's fact sheet).

[10] ECF # 31 (minutes of oral argument); ECF # 32 (transcript of oral argument).

## Facts

**A.    Background**

The claim here was originally filed in 2004 and then, after being denied by the Commissioner, was the subject of a civil action filed here in 2008.[11] After the parties stipulated to a remand to consider the assessment of one of Humphrey's treating physician's, an additional hearing before a new Administrative Law Judge ("ALJ") was held in 2010, and in 2011 the claim was again denied.[12]

**B.    The ALJ's decision**

Humphrey, who was born in 1967,[13] testified that she completed the ninth grade while attending special education classes[14] and that she previously worked as a maintenance supervisor and cleaner, as well as an apartment leasing manager.[15] She told the ALJ that she is disabled by reason of "chronic pain in her back and neck which radiates into her arms and legs ...[thereby causing] her arms and legs to give out ...[after] standing, sitting or walking

---

[11] *See*, ECF # 24 at 2 (citing Transcript of Administrative Proceedings ("Tr.") ECF # 13).

[12] *Id.* at 2-3.

[13] Tr. at 734.

[14] *Id.* at 793.

[15] *Id.* at 787; *see also*, ECF # 19 at 2.

for too long."[16] In addition, she testified that she "has trouble concentrating due to her depression and pain."[17]

Upon consideration of Humprey's testimony and the medical evidence, the ALJ determined that she had severe impairments consisting of degenerative disc disease of the cervical and lumbar spine and dysthymia.[18] In next determining that these impairments did not meet or equal a listing, the ALJ specifically found that the physical impairment did not meet listing § 1.04 and that the mental impairment of dysthymia, or chronic depression, did not meet or equal listing § 12.04.[19]

The ALJ then made the following finding regarding Humphrey's residual functional capacity (RFC):

> The claimant has the residual functional capacity to perform sedentary work
> ... except

> • she must be able to alternate between sitting and standing every hour
> for five minutes

> • she can occasionally climb stairs and ramps

> • she can occasionally balance, stoop, kneel and crawl

> • she cannot bend

---

[16] Tr. at 728.

[17] *Id.*

[18] *Id.* at 726.

[19] *Id.* at 726-27.

- she can reach in front but not overhead

- she can handle, finger and feel

- she must [avoid] hazardous conditions or extreme cold

- she can perform simple routine tasks with simple short instructions and [make] simple workplace decisions in an environment with few work place changes

- she can have no public contact and only superficial contact with coworkers and supervisors. [20]

Given that residual functional capacity, the ALJ found Humphrey incapable of performing her past relevant work as a maintenance supervisor, cleaner, and apartment leasing manager.[21]

Based on an answer to a hypothetical question posed to the vocational expert at the hearing setting forth the residual functional capacity finding quoted above, the ALJ determined that a significant number of jobs existed locally and nationally that Humphrey could perform.[22] The ALJ, therefore, found Humphrey not under a disability.[23]

## C.    Arguments for reversal of the Commissioner's decision

Humphrey asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Humphrey presents three arguments for consideration:

---

[20] *Id.* at 728.

[21] *Id.* at 733-34.

[22] *Id.* at 734-35.

[23] *Id.* at 735.

1.     The ALJ found that the opinions of Dr. Waghray, one of Plaintiff's treating physicians, were not entitled to controlling weight, and in particular the ALJ imposed no manipulative limitations. This finding was not supported by substantial evidence, as the record fully supports Dr. Waghray's opinions. Plaintiff has consistently complained of upper extremity symptoms, she has undergone two cervical fusions, and an EMG/NCV test shows left sided radiculopathy from the exact level of her second cervical fusion.[24]

2.     The ALJ found that Plaintiff's complaints were not fully credible. This finding lacks the support of substantial evidence because the ALJ's credibility finding misstates the evidence concerning Plaintiff's emergency treatment of January 2010 and misreads her drug screening test.[25]

3.     The ALJ neglected to find that Plaintiff had an additional problem due to borderline intellectual functioning, and imposed no limitations on her ability to read or perform other cognitive functions in the workplace. The evidence, including objective IQ testing, supports the existence of intellectual limitations in Plaintiff, and supports that her difficulties in reading would further limit her employment functioning.[26]

## Analysis

### A.     Standards of review

### 1.     *Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact,

---

[24] ECF # 24 at 1.

[25] *Id.*

[26] *Id.*

if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[27]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence.  If such is the case, the Commissioner survives "a directed verdict" and wins.[28]  The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[29]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

## 2.    *Treating physician rule*

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.

---

[27] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

[28] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06cv403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[29] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.[30]

If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.[31]

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[32] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[33]

The regulation does cover treating source opinions as to a claimant's exertional limitations and work-related capacity in light of those limitations.[34] Although the treating source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[35] nevertheless, it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" to receive such weight.[36] In deciding if such

---

[30] 20 C.F.R. § 404.1527(d)(2).

[31] *Id.*

[32] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004).

[33] *Id.*

[34] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003), citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003).

[35] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

[36] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

supporting evidence exists, the Court will review the administrative record as a whole and may rely on evidence not cited by the ALJ.[37]

In *Wilson v. Commissioner of Social Security*,[38] the Sixth Circuit discussed the treating source rule in the regulations with particular emphasis on the requirement that the agency "give good reasons" for not affording controlling weight to a treating physician's opinion in the context of a disability determination.[39]  The court noted that the regulation expressly contains a "good reasons" requirement.[40]  The court stated that to meet this obligation to give good reasons for discounting a treating source's opinion, the ALJ must do the following:

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.

- Identify evidence supporting such finding.

- Explain the application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight that should be given to the treating source's opinion.[41]

The court went on to hold that the failure to articulate good reasons for discounting the treating source's opinion is not harmless error.[42]  It drew a distinction between a

---

[37] *Id.* at 535.

[38] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

[39] *Id.* at 544.

[40] *Id.*, citing and quoting 20 C.F.R. § 404.1527(d)(2).

[41] *Id.* at 546.

[42] *Id.*

regulation that bestows procedural benefits upon a party and one promulgated for the orderly transaction of the agency's business.[43]  The former confers a substantial, procedural right on the party invoking it that cannot be set aside for harmless error.[44]  It concluded that the requirement in § 1527(d)(2) for articulation of good reasons for not giving controlling weight to a treating physician's opinion created a substantial right exempt from the harmless error rule.[45]

The opinion in *Wilson* sets up a three-part requirement for articulation against which an ALJ's opinion failing to assign controlling weight to a treating physician's opinion must be measured.  First, the ALJ must find that the treating source's opinion is not being given controlling weight and state the reason(s) therefor in terms of the regulation – the absence of support by medically acceptable clinical and laboratory techniques and/or inconsistency with other evidence in the case record.[46]  Second, the ALJ must identify for the record evidence supporting that finding." [47]  Third, the ALJ must determine what weight, if any, to give the treating source's opinion in light of the factors listed in 20 C.F.R. § 404.1527(d)(2).[48]

---

[43] *Id.*

[44] *Id.*

[45] *Id.*

[46] *Wilson*, 378 F.3d at 546.

[47] *Id.*

[48] *Id.*

In a nutshell, the *Wilson* line of cases interpreting the Commissioner's regulations recognizes a rebuttable presumption that a treating source's opinion should receive controlling weight.[49] The ALJ must assign specific weight to the opinion of each treating source and, if the weight assigned is not controlling, then give good reasons for not giving those opinions controlling weight.[50] In articulating good reasons for assigning weight other than controlling, the ALJ must do more than state that the opinion of the treating physician disagrees with the opinion of a non-treating physician[51] or that objective medical evidence does not support that opinion.[52]

The failure of an ALJ to follow the procedural rules for assigning weight to the opinions of treating sources and the giving of good reason for the weight assigned denotes a lack of substantial evidence even if the decision of the ALJ may be justified based on the record.[53] The Commissioner's *post hoc* arguments on judicial review are immaterial.[54]

Given the significant implications of a failure to properly articulate (*i.e.*, remand) mandated by the *Wilson* decision, an ALJ should structure the decision to remove any doubt as to the weight given the treating source's opinion and the reasons for assigning such

---

[49] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007).

[50] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009).

[51] *Hensley v. Astrue*, 573 F.3d 263, 266-67 (6th Cir. 2009).

[52] *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551-52 (6th Cir. 2010).

[53] *Blakley*, 581 F.3d at 407.

[54] *Wooten v. Astrue*, No. 1:09-cv-981, 2010 WL 184147 (N.D. Ohio Jan. 14, 2010).

weight.  In a single paragraph the ALJ should state what weight he or she assigns to the treating source's opinion and then discuss the evidence of record supporting that assignment. Where the treating source's opinion does not receive controlling weight, the decision must justify the assignment given in light of the factors set out in §§ 1527(d)(1)-(6).

The Sixth Circuit has identified certain breaches of the *Wilson* rules as grounds for reversal and remand:

- the failure to mention and consider the opinion of a treating source,[55]

- the rejection or discounting of the weight of a treating source without assigning weight,[56]

- the failure to explain how the opinion of a source properly considered as a treating source is weighed (*i.e.*, treating v. examining),[57]

- the elevation of the opinion of a nonexamining source over that of a treating source if the nonexamining source has not reviewed the opinion of the treating source,[58]

- the rejection of the opinion of a treating source because it conflicts with the opinion of another medical source without an explanation of the reason therefor,[59] and

---

[55] *Blakley*, 581 F.3d at 407-08.

[56] *Id.* at 408.

[57] *Id.*

[58] *Id.* at 409.

[59] *Hensley*, 573 F.3d at 266-67.

- the rejection of the opinion of a treating source for inconsistency with other evidence in the record without an explanation of why "the treating physician's conclusion gets the short end of the stick."[60]

The Sixth Circuit in *Blakley v. Commissioner of Social Security*[61] expressed skepticism as to the Commissioner's argument that the error should be viewed as harmless since substantial evidence exists to support the ultimate finding.[62] Specifically, *Blakley* concluded that "even if we were to agree that substantial evidence supports the ALJ's weighing of each of these doctors' opinions, substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2) as harmless error."[63]

In *Cole v. Astrue*,[64] the Sixth Circuit recently reemphasized that harmless error sufficient to excuse the breach of the treating source rule only exists if the opinion it issues is so patently deficient as to make it incredible, if the Commissioner implicitly adopts the source's opinion or makes findings consistent with it, or if the goal of the treating source regulation is satisfied despite non-compliance.[65]

---

[60] *Friend*, 375 F. App'x at 551-52.

[61] *Blakley*, 581 F.3d 399.

[62] *Id.* at 409-10.

[63] *Id.* at 410.

[64] *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011).

[65] *Id.* at 940.

**B.     Application of standards**

*1.     The ALJ's assessment of the opinion of treating physician Dr. Waghray conforms to the treating physician rule and is supported by substantial evidence.*

Initially, it is necessary to precisely define the scope of the first issue on review. While some questions concerning the handling of opinions from other treating sources appeared to arise at various points, the issue as presented in Humphrey's brief lists only the ALJ's treatment of the opinion of Dr. Waghray as being at issue,[66] a fact which was explicitly confirmed in the oral argument by Humphrey's counsel.[67]

Further, the dispute concerning Dr. Waghray's opinion centers on the portion of that opinion relating to Humphrey's ability to utilize her left hand – an opinion which the ALJ gave little weight.[68] In so doing, the ALJ began by acknowledging that Dr. Waghray was Humphrey's primary care doctor.[69] But, the ALJ gave little weight to that portion of Dr. Waghray's opinion dealing with any limitations on manipulative functions, citing five distinct, carefully documented reasons:

a.     although Dr. Waghray (and Humphrey) base a claim for manipulative limitations on results from pin prick tests showing numbness and tingling, there is no evidence that any numbness and tingling relate to any proven impairment;

b.     three distinct functional capacity evaluations – in 2004, 2008, and 2010 – all rated Humphrey capable of "frequent fingering;"

---

[66] ECF # 24 at 11-16.

[67] ECF # 32 (transcript of oral argument) at 12.

[68] Tr. at 731.

[69] *Id.* at 730.

-14-

    c.      while a 2004 test showed Humphrey had reduced grip strength, the physical therapist administering that test reported that Humphrey was "self-limiting" during the test;

    d.      the pin prick tests, on which Humphrey and Dr. Waghray rely, were done on both sides (bilateral), "while the claimant's radiculopathy is only in the left arm;"

    e.      Dr. Waghray is not a specialist in orthopedics or neurology, a fact which is evidenced by his incorrectly stating that Humphrey suffered from cervical stenosis when no evidence of that condition appeared in the radiology.[70]

These multiple reasons, each clearly stated, are contested to some extent by Humphrey in her brief. In particular, she makes three major arguments:

    a.      the "pin prick tests" (a term that Humphrey objects to in that these tests were part of an EMG/NCV test done in 2008) were related by Dr. Blatt to nerve injuries from her degenerative disc – one of the impairments found by the ALJ – and the results for the left arm were confirmed by later testing;[71]

    b.      the "self-limiting" comment about the 2004 grip test actually related to the fact that Humphrey was beginning to show the effect from cervical pain after multiple grips – a finding that Humphrey would need to pace her work and that then should have been included in the RFC;[72]

    c.      the ALJ was internally inconsistent in giving great weight to Dr. Waghray's general, non-specific comments about Humphrey retaining some capacity for work while giving little weight to specific, functional opinions – and doing so by "cherry picking" seemingly contradictory portions of other findings.[73]

---

[70] *Id.* at 731.

[71] ECF # 24 at 13-14.

[72] *Id.* at 14-15.

[73] *Id.* at 15-16.

This issue arises at the intersection of the treating source rule and the good reasons requirement. As discussed, these elements, taken together, form the rubric under which courts will review an ALJ's decision to accord lesser weight to the opinion of a treating source. Although often referred to as a single rule, it must be emphasized that there are two distinct elements to be analyzed in conducting any judicial review.

Here, there is no dispute that the second "good reasons" element is at issue.

Initially, as to the treating source rule, although the ALJ does not explicitly identify Dr. Waghray as a treating source whose opinion under the rule is presumptively entitled to controlling weight, it is clear that the ALJ viewed him as such by stating that he was Humphrey's "primary care doctor"[74] and by performing a version of the test set forth in the regulations by which a treating source opinion is accorded less than controlling weight.[75] In that regard, and as will be developed below, the ALJ here took note of factors like the extent to which the treating source opinion is supported by and/or consistent with other evidence and the fact that Dr. Waghray is not a specialist in orthopedics or neurology.[76]

Accordingly, having determined that the opinion of Dr. Waghray, though a treating source, should be accorded less than controlling weight, the matter then becomes whether

---

[74] Tr. at 730.

[75] *See*, *id.*; *see also*, 20 C.F.R. §§ 404.1527(d)(2), 416.927(c)(2); *Wilson*, 378 F.3d at 544 (citing 20 C.F.R. § 404.1527(d)(2)). As delineated in *Wilson*, these factors are the length of the treating relationship and frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source.

[76] Tr. at 730-31.

-16-

the ALJ then complied with the good reasons requirement. As has been plainly taught by the

Sixth Circuit, compliance with the good reasons requirement means that:

> (1)     the ALJ must clarify where the treating source opinion was not well-supported by medically acceptable clinical and diagnostic evidence or was otherwise inconsistent with other substantial evidence in the record, identifying the evidence supporting such a conclusion;

> (2)     the ALJ must explain how he applied the factors used to determine that the opinion of the treating source was not entitled to controlling weight;

> (3)     "the ALJ's explanation must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."[77]

It is evident from the record and from the decision of the ALJ that the good reasons

requirement has been met in this case. Most particularly, there are two elements of the record

cited by the ALJ that are unchallenged by Humphrey. First, the existence of three separate

functional capacity evaluations over a period of six years that found Humphrey capable of

frequent fingering.[78] Further, the fact that Dr. Waghray is not a specialist in orthopedics or

------

[77] *Helm v. Comm'r of Soc. Sec.*, 405 F. App'x 997, 1000 (6th Cir. 2011) (citation and internal quotation marks omitted).

[78] Tr. at 731 (citing to functional capacity evaluations in 2004, 2008, and 2010). I note that although the ALJ does not extensively discuss these studies in the reasoning paragraph itself, he does clearly identify them by reference to the record. Further, he does discuss each of these studies individually in other portions of the opinion and there accords specific weight to each result on the basis of how well the conclusion was supported by the findings of the functional tests. *See*, *e.g.*, Tr. at 730 (2004 functional evaluation), at 731 (2008 functional evaluation), at 732 (2010 functional evaluation). As such, the ALJ's reasoning on this issue is clearly established on the record to a reviewing court and so conforms to that aspect of the good reasons requirement.

neurology is clearly spelled out by the ALJ, who then supports the relevance of that finding by pointing to a lack of clinical support for a prior opinion of Dr. Waghray.[79]

As such, I find that the ALJ here complied with both the treating source rule and the good reasons requirement in affording the functional capacity opinion of Dr. Waghray less than controlling weight, and that this decision was supported by substantial evidence.

**2.      The ALJ's credibility decision to discount Humphrey's credibility was proper under the applicable standards and is supported by substantial evidence.**

As I detailed in *Cross v. Commissioner of Social Security*,[80] and as is well-established by case authority, the ALJ's findings on credibility are entitled to deference from the reviewing court, and may not be disturbed without compelling reasons.[81] Regulations set forth factors to be considered in assessing credibility,[82] and if an ALJ is to discount a claimant's complaints as incredible, he must clearly state the reasons for doing so.[83]

Here, there is no dispute that, in discounting Humphrey's credibility as to pain, the ALJ cited to: (a) opinions from two neurosurgeons (Drs. Blatt and Itani), stating that there were no objective findings supporting the claims of pain;[84] (b) inconsistent response to

---

[79] Tr. at 731.

[80] *Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005).

[81] *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).

[82] 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii).

[83] *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994).

[84] Tr. at 733.

-18-

treatment (despite improvement from physical therapy, Humphrey ceased treatment);[85] and (c) evidence that Humphrey "overstates" her symptoms, with particular note of a 2010 emergency room visit that the ALJ found contained evidence that Humphrey "dramatically overstate[d] her symptoms compared to her actual functioning."[86] In addition, the ALJ took note of "medical evidence including radiology and EMG's, the functional capacity evaluations and evidence of symptom magnification in the record" to support the discounting of Humphrey's claims of pain.[87]

Almost exclusively, Humphrey contests drawing any negative conclusions from the 2010 emergency room visit, arguing that "there was a reason for Plaintiff's somewhat bizarre behavior at that time."[88] Yet, even if the ALJ misconstrued that event, the reasons for discounting Humphrey's credibility are, as detailed above, far more extensive than any conclusions that might have been drawn from that single episode. As presented by the ALJ, those reasons include opinions from medical specialists and Humphrey's actions on numerous other occasions – none of which are here disputed by Humphrey.

Accordingly, for the reasons stated and applying the relevant standard, I find that the decision of the ALJ to find Humphrey "not fully credible" in her claims of debilitating pain is supported by substantial evidence and will not here be disturbed.

---

[85] *Id.*

[86] *Id.*

[87] *Id.*

[88] ECF # 24.

**3.**      ***The RFC findings as to cognitive function are supported by substantial evidence.***

In her final argument, Humphrey contends that it was "plain error" by the ALJ not to find that she has the  severe impairment of borderline intellectual functioning and then to not further restrict her RFC to reflect such an impairment.[89]

The Commissioner responds initially that, because the ALJ's analysis went beyond step two and found some severe impairments, it is "legally inconsequential" that the ALJ may have not found another severe impairment.[90] Rather, the Commissioner asserts, the relevant issue is whether the RFC is proper as concerns any limitations arising out of purported  difficulties in Humphrey's cognitive functioning.[91]

The residual functional capacity is a determination of the claimant's "maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis."[92]

Moreover, as the Commissioner correctly observed, *Anthony v. Astrue* does impose a requirement that once a severe impairment is determined, "the combined effect of all impairments must [then] be considered, even if other impairments would not be severe."[93]

---

[89] *Id.* at 19-20.

[90] ECF # 30 at 12 (quoting *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008)).

[91] *Id.* at 12-13.

[92] SSR 96-8p, 1996 WL 374184 (July 2, 1996).

[93] *White v. Comm. of Soc. Sec.*, 312 F. App'x 779, 787 (6th Cir. 2009) (referencing 20 C.F.R. §§ 404.1523 and 404.1545(a)(2)).

Therefore, once Humphrey was determined to have any severe impairments, the ALJ was required to consider those impairments as well as any non-severe impairments in assessing her RFC.[94]

In this case, the ALJ did note that Humphrey has a severe mental impairment in the form of dysthymia, or a form of chronic depression.[95] But this impairment was found to create only some partial limitations, based on a psychological assessment.[96] There is no argument here that any limitations due to Humphrey's dysthymia were not properly reflected in the RFC.

As to any non-severe impairment of borderline intellectual functioning, the ALJ did note that Humphrey's treating psychologist, James Medling, Ph.D., stated that Humphrey "appeared to function in the low average range," but that, in Dr. Medling's opinion, Humphrey would "have good to fair abilities to handle instructions."[97]

Based on that limited discussion, and on the balance of the evidence in the record, the RFC contained mental limitations restricting Humphrey to doing "simple routine tasks with simple short instructions and [making] simple workplace decisions in an environment with

---

[94] *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 191 (6th Cir. 2009).

[95] Tr. at 726.

[96] *Id.* at 731 (citing Martin Meyer, Ph.D.).

[97] *Id.* at 727.

-21-

few workplace changes."[98] In addition, the RFC mandated that Humphrey have "no public contact and only superficial contact with coworkers and supervisors."[99]

Thus, while the ALJ's discussion was not extensive as to how the non-severe impairment of Humphrey's cognitive abilities would affect her RFC, the discussion is present on the record and is supported by evidence cited by the ALJ. Inasmuch as the RFC does contain significant restrictions as to any mental demands, and given that Humphrey is neither illiterate but merely "has difficulty with reading"[100] (her reading aptitude being measured at a fifth-grade level),[101] I find that there is no error in the RFC itself or in the ALJ's discussion of why no further mental restrictions were incorporated into that RFC. Thus, applying the applicable standard to the present case, I find the RFC to be supported by substantial evidence.

## Conclusion

For the reasons stated above, I find that the ALJ's finding of no disability is supported by substantial evidence and is, therefore, affirmed.

IT IS SO ORDERED.

Dated: March 14, 2013                              s/ William H. Baughman, Jr.
                                                   United States Magistrate Judge

---

[98] *Id.* at 728.

[99] *Id.*

[100] ECF # 32 (transcript of oral argument) at 7.

[101] *Id.* at 8.